IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:02CR238 |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| DONALD H. ASAY, | ) | |
| TERRY J. SAMOWITZ, | ) | |
| GREGORY W. ENGER and | ) | |
| DONALD A. HEIDEN, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' motion to dismiss (Filing No. 259). In the motion, the defendants contend the Superseding Indictment (Filing No. 240) should be dismissed for pre- and post-indictment delay and because such indictment fails to allege the element of materiality, making it fatally defective. The defendants filed a brief (Filing No. 260) in support of their motion. The government filed a brief (Filing No. 282) in opposition to the motion.

The court heard evidence and additional argument related to the motion on March 1-2, 2005. The transcript (295TR.) of the hearing was filed on March 10, 2005. **See** Filing No. 295. During the hearing Special Agent Laura J. Stewart (Special Agent Stewart) and Professor Joseph P. Bauer (Professor Bauer) testified. The court received into evidence Exhibits 1-18 from the government and Exhibits 100-119 from the defendants. **See** Filing No. 293. Additionally, the court took judicial notice of the transcript (208TR.) (Filing No. 208) from a November 12, 2003 hearing in this case (295TR. 221).

## BACKGROUND

The defendants are charged in an eighteen-count indictment with mail fraud in violation of 18 U.S.C. §§ 1341 and 2 (Counts 1-15); wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Count 16); conspiracy to launder money in violation of 18 U.S.C. §§ 1956(h) and 2 (Count 17); and criminal forfeiture under 18 U.S.C. § 982 (Count 18). **See** Filing No. 240. The

charges are based upon allegations the defendants fraudulently represented they were buying for closed-door pharmacies, to purchase pharmaceuticals at a discounted rate, with the intent to illegally divert pharmaceuticals to a wholesale market for higher profit. A closed-door pharmacy is one which typically purchases pharmaceuticals at a discounted rate, below wholesale rates, and dispenses to institutional clients such as hospital, prison or nursing home patients, rather than to retail locations. **See *id.* ¶¶** 3-4. The closed-door pharmacies only receive the discounted rate if they certify, with an "own-use" certification, that the pharmaceuticals are purchased for its own-use or will be dispensed only to patients in its institutional locations. **See *id.*** ¶ 4. The closed-door pharmacies often join buying groups whose business it is to negotiate contract prices with the pharmaceutical manufacturers. **See *id.*** ¶ 5.

## ANALYSIS

**A.   Pre-Indictment Delay**

The defendants contend the government's delay in indicting them on the instant charges violate their fifth amendment due process rights. "[A]n unreasonable pre-accusation delay, coupled with prejudice to the defendant, may violate the Fifth Amendment." ***United States v. Grap***, 368 F.3d 824, 829 (8th Cir. 2004) (**quoting *United States v. Jackson***, 504 F.2d 337, 339 (8th Cir. 1974)); **see also *United States v. Marion***, 404 U.S. 307, 324-26 (1971). To prevail on a claim that pre-indictment delay warrants dismissal of the indictment, the defendants are required to show "both that the government deliberately delayed in order to gain a tactical advantage and that the delay prejudiced [them] in presenting [their] case." ***Grap***, 368 F.3d at 829 (**quoting *United States v. Carlson***, 697 F.2d 231, 236 (8th Cir. 1983)). Alleged prejudice is insufficient to establish a due process violation if it is "insubstantial, speculative, or premature." ***Id.*** Rather, the defendants must show they suffered actual and substantial prejudiced by the delay. ***United States v. Sprouts***, 282 F.3d 1037, 1041 (8th Cir. 2002). "To prove actual prejudice, the defendant must identify witnesses or documents lost during the period of delay, and not merely make speculative or conclusory claims of possible prejudice caused by the passage of time." ***Id.*** A defendant fails to show actual prejudice where he fails to relate the substance of a lost witness's "testimony to show

it would have been relevant or beneficial to his case, and fail[s] to identify any relevant documents that were lost or misplaced or the information they contained." ***United States v. McDougal***, 133 F.3d 1110, 1113 (8th Cir. 1998) (holding nine and one-half year delay did not violate due process right where no showing of actual prejudice); **see *United States v. Sturdy***, 207 F.3d 448, 452 (8th Cir. 2000) (although potential witness was no longer an employee, no evidence testimony would have supported defendant's case or that testimony was otherwise unavailable). The moving defendant also has the burden of showing that the lost testimony or information is not available through other means. ***Sprouts***, 282 F.3d at 1041.

The conduct forming the basis for the indictment occurred from approximately February 4, 1997 until September 25, 1998. **See** Filing No. 240 (Superceding Indictment). The initial indictment in this case was returned on August 22, 2002. **See** Filing No. 1. The defendants argue the nearly four-year delay to indict is based on an attempt to gain a tactical advantage because 1) there is no reason for the delay and 2) the government is simultaneously prosecuting pharmaceutical companies based on legal positions, which are inconsistent with the legal theories in this case. The defendants also argue their defense is seriously impaired because the passage of time has caused the loss of documents and witnesses. The defendants state they believe the documents, which may have been destroyed or lost, and the witnesses, who no longer work for the companies involved, "would have supported their defense that the 'own use' representations made no difference to the manufacturer's willingness to enter into contracts with the defendants' pharmacies, and had no effect on the price at which the drugs were ultimately offered to the defendants."

In support of the motion, the defendants presented evidence of affidavits from various pharmaceutical companies. **See** Exhibits 106-110. The affidavits were originally presented to oppose subpoenas for documents served by the defendants. The affidavits describe the difficulty or inability of the affiants to comply with the subpoenas based on the passage of time, change in circumstances and privacy or confidentiality issues raised by the nature of documents sought. On March 9, 2004, the court entered an order granting, in part, and denying, in part, several motions to quash filed by the subpoenaed pharmaceutical

companies.  **See** Filing No. 213 (**aff'd** on appeal by Filing No. 237).  In the order, the court noted the companies' agreement to provide certain pricing information pursuant to protective orders or the companies were compelled to comply with the subpoenas' requests.  ***Id.***

The government contends the defendants cannot show actual prejudice because they have failed to identify specific documents or witness testimony which has been lost. Additionally, the government argues the defendants cannot show the delay was intentional. The government states the investigation into the defendants' activities continued well beyond the time period alleged in the indictment.  Further, the government states it is unlikely the prosecuting attorney even knew about the prosecution against the pharmaceutical companies. Finally, the government contends there is no evidence of a tactical gain due to the delay or any intention to harass the defendants.

The court finds the defendants have failed to show how any of the unaccounted for documents or witnesses "would have supported their defense that the 'own use' representations made no difference to the manufacturer's willingness to enter into contracts with the defendants' pharmacies, and had no effect on the price at which the drugs were ultimately offered to the defendants."  Further, the defendants have failed to show the lost evidence is not otherwise available.  The defendants do have access to pricing information and witnesses to support their claims.

Because the defendants have not carried their burden to show the preindictment delay actually prejudiced the defense, the court need not assess the government's rationale for the delay.  ***Sprouts***, 282 F.3d at 1041.  Notwithstanding the failure to show actual prejudice, the court finds the defendants failed to show the government deliberately delayed the indictment in order to gain a tactical advantage.  The evidence presented at the hearing showed the investigation of the matter continued through 2002, even though Special Agent Stewart had gathered evidence of the alleged criminal activity in 1998 and 1999 (TR. 59-60, 148-149). Further, any delay caused by waiting for the resolution of a similar criminal matter did not tactically advantage the government, but prevented filing of a potentially legally unwarranted charge.  Therefore, the defendants' motion to dismiss based on a due process violation through preindictment delay should be denied.

**B.      Speedy Trial**

"[T]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences," and no Sixth Amendment right to a speedy trial arises until charges are pending. **Sprouts**, 282 F.3d at 1042 (citation omitted). The Supreme Court identified four factors to consider when applying a Sixth Amendment balancing test to a pretrial delay: the length of delay, the reason for delay, whether the defendant asserted the right to a speedy trial, and whether the defendant suffered any prejudice. **Barker v. Wingo**, 407 U.S. 514, 530 (1972).

The initial indictment in this matter was filed on August 22, 2002, and trial has not yet commenced. **See** Filing No. 1. The defendants contend that an excess of two-year pre-trial delay is uncommonly long and has prejudiced their defense. Further, the defendants argue the government is to blame for the lengthy delay due to failure to timely submit discovery and delay caused by the recusal of more than one federal judge from the case. In either event, the defendants assert they should not be held responsible for the delays.

The delay in this case, approaching three years, meets the threshold for presumptively prejudicial delay requiring a speedy trial inquiry. **See Doggett v. United States**, 505 U.S. 647, 652 n.1 (1992); **United States v. Walker**, 92 F.3d 714, 717 (8th Cir. 1996) (37 month delay presumptively prejudicial). Thus, the length of delay triggers the remainder of the speedy trial analysis and the length of delay is weighed with the remaining factors to determine whether a violation occurred.

The court finds the length of delay in this case weighs in favor of the defendants. However, the defendants did not assert their right to a speedy trial until the filing of their motion to dismiss in December 2004. Therefore, the defendants' delay in asserting the right weighs against the defendants.

The court will evaluate the second and fourth factors together since the reason for the delay and prejudice caused by the delay are related. The second **Barker** factor involves determining who is responsible for the delay, the defendant or the government. **Doggett**, 505 U.S. at 652. Any intentional delay by the government will weigh heavily against it. **Barker**, 407 U.S. at 531. However, negligence will be weighted less heavily against the government but

is still a considerable factor in the weighing process.  *Id.*; **see also** *Doggett*, 505 U.S. at 652-53.

The final factor is prejudice to the defendants.  The Supreme Court has identified three interests to evaluate prejudice: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  *Barker*, 407 U.S. at 532.  While the physical evidence and witnesses in this case may still be available, the prejudice may be presumed if not persuasively rebutted.  *Barker*, 407 U.S. at 534.   As the court stated in *Doggett*:

> Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.  And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.  Thus, our toleration of such negligence varies inversely with its protractedness, **cf.** *Arizona v. Youngblood*, 488 U.S. 51 (1988), and its consequent threat to the fairness of the accused's trial.  Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority.  The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; . . . .

*Doggett*, 505 U.S. at 657.

In this case there is no evidence of persistent neglect.  The case has proceeded slowly since the time of the indictment due to the complexity of the matters involved and various pretrial motions.  For example, the defendants served subpoenas to many pharmaceutical companies who vigorously resisted disclosure, requiring several delays before resolution.[1]  The defendants contend the government caused a several-month delay by failure to provide

---

[1] The first motion to quash was filed on April 18, 2003.  **See** Filing No. 72.  However, a final resolution of the motions, after a hearing, was not filed until June 15, 2004.  **See** Filing No. 237.  Further, the defendants did not receive all of the responsive discovery until after that date.

discovery under the schedule imposed by the court. Additional delays occurred when the case was assigned to alternate federal judges. The defendants also joined in a motion for an extension of time and stated they "needed a substantial period of time" to review voluminous discovery. **See, e.g.,** Filing No. 244; 208TR. 23.

The defendants argue the government is to blame for the length of delay. However, the government contends both parties are equally responsible for the delay due to the various pretrial motions, complexity of the case, and amount of document discovery. The defendants contend they are prejudiced in their anxiety and concern over the charges and the possibility of the loss of exculpatory evidence. Specifically, the defendants argue the delay prevents them from attaining particular pricing information from the pharmaceutical companies and buying groups with whom they conducted business. The government contends the evidence presented to show prejudice indicates prejudice is speculative and tenuous.

The court finds neither party is primarily responsible for the period of delay between the time of the indictment and now. Both parties have filed motions, sought extensions and recognized the complexity of the issues and amount of discovery, which has slowed the progression of this case toward trial. Further, the defendants have failed to show any particular prejudice or impairment to the defense caused by the post-indictment delay. There is no evidence of any intentional conduct by the government to delay trial in order to cause prejudice to the defendants. Accordingly, balancing each of the relevant factors, the court finds no Sixth Amendment violation of the defendants' right to a speedy trial. Therefore, the undersigned magistrate judge will recommend the defendants' motion to dismiss based on the defendants' Sixth Amendment right to a speedy trial be denied.

**C.   Materiality**

The defendants contend dismissal of the fraud counts (Counts 1-16) is required because the indictment fails to allege the "own use" representations were material to the pharmaceutical transactions at issue. Specifically, the defendants argue the indictment must contain language alleging the "own use" representations were important to pharmaceutical wholesalers and induced the pharmaceutical companies to sell the pharmaceuticals at "greatly

reduced prices" relative to the absence of the own use representations. The defendants state they are not, in this motion, arguing the alleged misrepresentations are immaterial, only that the indictment fails to properly allege materiality. Finally, the defendants contend that because the missing allegations constitute an element of the offense, an amendment would not cure the indictment without depriving the defendants of the Grand Jury's basic protections.

"[T]he elements of mail and wire fraud are: (1) a scheme to defraud; (2) to get money or property; (3) furthered by using interstate mail or wires. Although the mail and wire fraud statutes do not define 'scheme to defraud,' case law demonstrates that the government is required to prove the existence of a scheme to defraud, fraudulent intent on the part of the defendants, and material misrepresentations or omissions made in furtherance of the scheme." ***United States v. United Imports Corp.***, 165 F. Supp. 2d 969, 971 (D. Neb. 2000) (**citing *Neder v. United States***, 527 U.S. 1, 20 (1999); ***United States v. Autuori***, 212 F.3d 105, 115 (2nd Cir. 2000)). Materiality of falsehood is an element of the federal mail fraud and wire fraud statutes. *Id.* at 4, 20-25. "In general, a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Id.* at 16 (citations and quotations omitted) (alteration in original). "The failure to employ the word 'material' in the language of the indictment [ ] is not fatal. Instead, an allegation of fraud in an indictment will be sufficient so long as the facts alleged in the indictment warrant an inference that the false statement is material." ***United States v. Bieganowski***, 313 F.3d 264, 285 (5th Cir. 2002) (**citing *United States v. Richards***, 204 F.3d 177, 191 (5th Cir. 2000) ("In determining the sufficiency of the indictment, '[t]he law does not compel a ritual of words.'" (**quoting *United States v. Wilson***, 884 F.2d 174, 179 (5th Cir. 1989))).

The government argues the indictment is sufficient because it describes the nature of a "closed-door" pharmacy and describes the process by which "closed-door" pharmacies receive discounted pharmaceuticals based on their representation of their own pharmaceutical use for institutional clients, rather than for retail sales. Further, the indictment alleges the lower contract prices are generally only made available to "closed-door" pharmacies, but not to retail pharmacies or wholesale companies. Finally, the indictment

alleges the defendants participated in a scheme for obtaining money and property by means of false and fraudulent representations. The indictment states the defendants obtained pharmaceuticals at greatly reduced prices by falsely representing their pharmacies were "closed-door" pharmacies. The defendants were only able to represent their pharmacies as "closed-door" by certifying they would use the pharmaceuticals for their "own-use" in order to join buying groups.

In this case there is sufficient information provided in the indictment to inform the defendants of the charges against them. The allegations of fraud in the indictment are sufficient, as the facts alleged in the indictment warrant an inference that the false statements are material. The indictment is not so defective that it cannot be reasonably construed to charge mail and wire fraud. Therefore, the undersigned magistrate judge will recommend the motion to dismiss for failure to allege materiality be denied. Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

The defendants' Motion to Dismiss Indictment (Filing No. 259) is denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 10th day of June, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge